Receipt # 060240

ECF

ORIGINAL

FILED
APR 9 2004
U.S. COURT OF FEDERAL CLAIMS

Kevin Egan Anderson
Douglas J. Parry
PARRY ANDERSON & GARDINER
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
Phone: (801) 521-3434
Fax: (801) 521-3484

Attorneys for Plaintiffs

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THOMAS D. PETERSON, SAUNDRA L. PETERSON, RANDAL J. PETERSON, SHEELAGH M. MURPHY, and DON R. PARKER,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; THE FEDERAL AVIATION ADMINISTRATION OF THE UNITED STATES OF AMERICA; and JOHN DOES I - XX,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 04-634C<br><br>Judge ____________ |

Plaintiffs for causes of action against the Defendants complain and allege as follows:

**PARTIES**

1. Plaintiffs are the owners of property in Salt Lake County, Utah, which is the subject of this Complaint and which has been trespassed upon by Defendants.

2. The Federal Aviation Administration is an agency of the United States of America.

3. The John Doe Defendants are other agencies or departments of the government of

the United States, or are individuals who have wrongfully assisted the named Defendants or are otherwise liable to the Plaintiffs.

## JURISDICTION

4. This Court has jurisdiction pursuant to its authority granted by 28 U.S.C. § 1491.

## GENERAL ALLEGATIONS

5. The following property, owned by plaintiffs at all material times, is located in Salt Lake County, Utah,

described as follows (the "Plaintiffs' Property"):

> Beginning at a point North 210.54 feet from the East quarter corner along the East line of Section 5, Township 1 North, Range 1 West: Salt Lake Base and Meridian, thence West 2640.0 feet to a point on the quarter section line of said Section 5, said point being North along said quarter section line 210.54 feet from the center of said Section 5; thence South 210.54 feet along said quarter section line to the center of said Section 5; thence West along the quarter section line 2640.00 feet to the West quarter comer of said Section 5; thence North along said section line 1320 feet more or less to the South Line of Lots 1, 2, 3 and 4 of said Section 5; thence North along the Section line 44.04 feet; thence East, paralleling said South line of Lots 1, 2, 3 and 4, 5250.23 feet more or less to the West property line of Salt Lake City Drainage Canal; thence Southeasterly along said properly line 772.4 feet more or less to the North line of a parcel of land owned by Salt Lake City; thence West along said property line 314.67 feet to the East line of said Section 5; thence South along said Section line 462.66 feet more or less to the point of beginning.

6. A portion of the Plaintiffs' Property is impacted by a lease, dated March 23, 1994, between Charles Frank Gillmor and Nadine F. Gillmor and the United States of America (the "Lease"), a copy of which is attached hereto as Exhibit "A," and is incorporated hereby this reference. This property includes that certain portion of the Plaintiffs' Property described on Exhibit "B" and all other portions of the Plaintiffs' Property impacted and affected by the Lease

(the "Leased Property").

7. Plaintiffs purchased and thereby became the owners of the Plaintiffs' Property including the Leased Property. Plaintiffs are the successors in interest to Charles Frank Gillmor and Nadine F. Gillmor in and to the Lease, by formal written assignment of the interests of the Gillmors, a copy of which assignment is attached hereto as Exhibit "C," and incorporated herein by this reference.

8. By Supplemental Lease Agreement No. 1, a copy of which is attached hereto as Exhibit "D," and incorporated herein by this reference, the government recognized the Plaintiffs as the Lessors under the Lease.

9. Defendants constructed and operate a VHF Omni Directional Range Tactical Air Navigation ("Vortac Tower") facility on the Plaintiffs' Property. However, the Vortac Tower constructed by Defendants was not built on the Leased Property. Instead, Defendants breached the lease and built the Vortac Tower, and the corridor running cables from the south boundary of Plaintiffs' property to the Vortac Tower (the "Vortac Cable Corridor") on property it was not leasing from Plaintiffs or their predecessors-in-interest, all without notice, permission or approval. Moreover, Defendants have constructed and use an access road from the south boundary of the Plaintiffs' property leading to the Vortac Tower.

10. In November, 2001, Defendants sent documents and surveys to Plaintiffs which indicated, for the first time, that the Vortac Tower is and has, during the entire term of the Lease been located on property other than that described in the Lease. The property identified by Defendants as the location of the Vortac Tower is described as follows (the "Vortac Property"):

A parcel of land containing 0.368 acres situated in the NW 1/4 of Section 5: TlN, Rl W, Salt Lake and Base Meridian, Salt Lake County, Utah, described as follows:

Beginning at a point North 89°49'05" East 1270.58 feet, along the quarter section line, and North 00°10'55" East 317.57 feet from a Salt Lake County monument marking the West Quarter Corner of said Section 5, Township 1 North, Range 1 West, Salt Lake and Base Meridian and running thence North 12°02'47" West for 18.06 feet; thence North 22°57'22" East for 113.76 feet; thence South 89°14'20" East for 106.84 feet; thence South 00°07'25" East for 119.97 feet; thence South 89°36'17" West for 147.69 feet to the point of beginning.

This description is plainly different from the description in the Lease, attached as Exhibit "B".

11. Moreover, since the execution of the Lease, and after Plaintiffs purchased the Plaintiffs' Property, Defendants, without consent, approval or an agreement with Plaintiffs, have constructed an additional structure, a monitor antenna, approximately 250 feet west of the center of the Vortac Property (the "Monitor Antenna"). The construction of the Monitor Antenna included, without limitation, wires, supports, cables, lines, and/or pipes connecting the Monitor Antenna to the Vortac Tower.

12. Defendants acknowledge that the Monitor Antenna is not located within the Vortac Property, or any other portion of Plaintiffs' Property in which Defendants have a possessory interest under the Lease. Instead, it is located on a portion of Plaintiffs' Property where Defendants have no possessory interest. Defendants represent that the Monitor Antenna is located on a parcel of property 8 feet by 8 feet in size, 250 feet west of the center of the Vortac Property. However, to effectively construct, access, use, maintain, service and operate the Monitor Antenna, the Defendant has, from the inception of the monitor antenna construction,

used a much larger area of property, estimated to be 30 ft. x 30 ft. for the Monitor Antenna, and a connecting cable corridor, for the buried cables, at least 15 feet wide, (the "Monitor Antenna Property").

The Defendants have used the connecting cable corridor not only for the connecting cables, but also to access, service and maintain the Monitor Antenna (the "Monitor Antenna Connecting Corridor").

13. Neither the Vortac Property nor the Monitor Antenna Property are located on the Leased Property. Instead, they are located on other areas of the Plaintiffs' Property where possessory interests are not leased by the Defendants.

14. The Lease contains a renewal provision that provides that the Lease may be renewed annually and provides that every three years from the original anniversary date of the Lease the Lessors have the option to request that the rent be increased consistent with the local fair market rental value of the Leased Property. Upon such a request, the Lessee is obligated to adjust the rent and pay as rent the local fair market rental value for the Property.

15. Prior to July 1, 1999, the Plaintiffs timely requested that the rental value be increased to reflect current market conditions.

16. Plaintiffs determined through a careful market analysis of the local market that the fair rental value of the Leased Property is not less than $17,000 per acre, or $103,900 per year. That information and analysis is reflected and set forth in a letter dated June 10, 1999, addressed and sent to Mr. Albert Lee, a copy of which is attached hereto as Exhibit "E."

17. Defendants rejected the rental increase requested by the Plaintiffs.

18. The local fair rental value of the Leased Property must be determined as of October 1, 1999, and Plaintiffs are entitled to recover the rental rate reestablished as of that date and continuing thereafter for the next three years, pursuant to the terms of the Lease, to ensure that the Plaintiffs receive the fair rental value of the Leased Property. The Defendant condemned the Leased Property as of December 30, 2002, so the rent should continue through that date.

19. The Lease does not confer possessory interests on, but impacts and includes non-possessory to approximately 61.5 additional acres of Plaintiffs' Property (the "Restricted Property"). The Restricted Property is within a 1,200 foot radius of the Vortac Property. Moreover, it renders a portion of the west, northwest and north of the Plaintiffs' Property unusable, uneconomic remnants because of the unusable, irregular size and shape (the "Unusable Property"). The Restricted Property and Unusable Property were also condemned as of December 30, 2002.

20. The combined effect is that not less than 76.4 acres of the Plaintiffs' Property are impacted, restricted and affected by the Lease, or other restrictions and prohibitions on the Plaintiffs' Property imposed by the Defendants for which Plaintiffs are entitled to compensation.

**FIRST CAUSE OF ACTION**

**(Determination of Rental Increase)**

21. Plaintiffs hereby incorporate paragraphs 1 through 20 as though fully set forth herein.

22. Pursuant to paragraph 2 of the Lease, effective as of October 1, 1999, Plaintiffs

are entitled to have the rent obligation due and owing under the Lease increased to reflect current local fair rental values and to receive rental payments in that amount dating back to October 1, 1999 and continuing through December 30, 2002.

23. This rental obligation which is subject to increase includes not only the possessory interests granted to Defendants under the Lease on certain portions of the Leased Property, but also those portions of the Plaintiffs' Property and the Leased Property on which the use of the property by Plaintiffs is regulated or restricted, or otherwise impacted, by the Defendants, including without limitation, the Restricted Property and the Unusable Property.

24. Defendants have breached the Lease by failing to acknowledge and pay the true fair rental value of the Plaintiffs' Property used, controlled and impacted by the Defendants under the Lease, including without limitation, the Leased Property, the Restricted Property, and the Unusable Property.

25. Plaintiffs have been damaged as a result of the breach of the Lease Agreement, and otherwise, by the failure of Defendants to acknowledge and pay the local fair market rental value of the Plaintiffs' Property consistent with the terms and provisions of the Lease.

26. Plaintiffs are entitled to a judgment determining the local fair rental value of those portions of Plaintiffs' Property used, controlled or impacted by the Defendants under the Lease as of October 1, 1999, and ordering the payment of that fair rental value and any additional increases to which Plaintiffs may be entitled, together with interest accruing thereon, and court costs and attorneys' fees as may be permitted by law, through December 30, 2002.

## SECOND CAUSE OF ACTION

**(Breach of Lease Agreement)**

27. Plaintiffs hereby incorporate paragraphs 1 through 26 as though fully set forth herein.

28. Defendants have occupied and used, and continue to occupy and use, portions of Plaintiffs' Property in which Defendants were not granted a possessory interest pursuant to the Lease. This includes, without limitation, the Vortac Property, the Vortac Cable Corridor, and portions of the Monitor Antenna Property and Monitor Antenna Connecting Corridor. This improper, unauthorized use includes without limitation, the construction and erection of facilities on, and use of, the Vortac Property, the separate Monitor Antenna Property, the Vortac Cable Corridor and the Monitor Antenna Connecting Corridor on portions of the Plaintiffs' Property for which possessory interests were not conferred by the Lease.

29. Defendants' actions as aforesaid constitute a breach of the Lease by constructing facilities and otherwise exercising possessory use and control over portions of the Plaintiffs' Property which were not covered by or granted to Defendants pursuant to the Lease.

30. Defendants continue to use and possess portions of the Plaintiffs' Property for purposes not permitted or authorized by the Lease, in violation thereof, including Defendants' possessory use of the Monitor Antenna Property, the Vortac Property, and the Connecting Corridor to the extent they are not located on the possessory interests conferred by the Lease.

31. As a result of the breach of the Lease by Defendants, Plaintiffs have suffered significant damage and injury.

32. Plaintiffs are entitled to judgment that defendants have breached the Lease as aforesaid; for damages resulting from said breach of the Lease Agreement, including without limitation, the fair rental value for the possessory use of the portions of the Plaintiffs Property in which the Lease did not grant defendants any possessory interest, as set forth above, in breach of the Lease Agreement; for future damages caused by Defendants' ongoing unlawful use of such property through December 30, 2002; and for all other damages suffered by Plaintiffs, including without limitation, actual and compensatory damages. Plaintiffs are also entitled to injunctive relief including the removal of the Vortac facility and the Monitoring Antenna and all wires, supports, cables, lines, and pipes connected thereto, and prohibiting Defendants from further use of the Vortac Property, the Monitor Antenna Property and the Connecting Corridor, and any other portion of Plaintiffs' Property possessed by Defendants in breach of the Lease.

WHEREFORE, plaintiffs pray for judgment against Defendants as follows:

A. Under the First Cause of Action for judgment determining that Defendants are in breach of the Lease Agreement by not increasing the rental payments due and owing thereunder as required by the Lease; for a determination of the local fair rental value of the portions of Plaintiffs' Property covered by the Lease as of October 1, 1999, including without limitation the Leased Property, the Restricted Property and the Unusable Property; and requiring the payment of such rental payments, and any additional rental increases to which Plaintiffs may be entitled, together with interest accruing thereon at the highest rate permitted under law or contract.

B. Under the Second Cause of Action for a judgment that Defendants have breached the Lease and awarding Plaintiffs damages in an amount to be established at the time of trial, together with interest thereon and for injunctive relief preventing any future use of and mandating the removal of the facilities constructed by Defendants that are located on portions of Plaintiffs' Property in which Defendants have no possessory interest.

C. For court costs and attorneys' fees to the extent permitted by law.

D. For such other and further relief as the Court deems just and proper under the circumstances.

DATED this 8th day of April, 2004.

PARRY ANDERSON & GARDINER

Kevin Egan Anderson

Plaintiffs' Address:

Tom Peterson
1435 E. Napa Street
Sonoma, CA 95476

EXHIBIT "A"

5796477

Lease

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
NORTHWEST MOUNTAIN REGION
1601 LIND AVENUE SW.
RENTON, WASHINGTON 98055-4056

Lease No. DTFA11-93-L-15553
Location: Salt Lake City, UT.
Facility: VORTAC

LEASE

between

Charles L. FRANK GILMORE & NADINE F. GILMORE, JOINT TENANTS

and

THE UNITED STATES OF AMERICA

THIS LEASE, made and entered into this 23rd day of March, 1994 by and between C. Frank Gilmore & Nadine F.Gilmore, Joint Tenants, whose address is;

P.O. Box 130
Oakley, Utah, 84055

for their heirs, executors, administrators, successors, and assigns, hereinafter called the Lessor and the United States of America, hereinafter called the Government:

WITNESSETH: The parties hereto for the consideration hereinaafter mentioned covenant and agree as follows:

1. TERM.

For the term beginning October 1, 1993 and ending September 30, 1994 the Lessor hereby leases to the Government the following described property, hereinafter called the premises, viz:

See attached, Exhibit "A" attached hereto and made a part hereof.

(a) Together with a right of way for ingress to and egress from the premises; a right of way for establishing and maintaining a pole line or pole lines for extending electrical power and telecommunications facilities to the premises; all rights-of-way to be over the said lands and adjoining lands of the Lessor, and unless herein described by metes and bounds, to be by routes reasonably determined to be the most convenient to the Government.

(b) And the right of grading, conditioning, and installing drainage facilities, and seeding the soil of the premises, and the removal of all obstructions from the premises which may constitute a hindrance to the establishment of Government facilities.



BK 6916 PG 21

(c) And the right to make alterations, attack fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased, which alterations, fixtures, additions, structures or signs so placed in or upon or attached to said premises shall be and remain the property of the Government,and may be removed upon the date of expiration or termination of this lease, or within ninety (90) days thereafter, by or on behalf of the Government, or its grantees, or purchasers of said alterations, fixtures, additions, structures, or signs.

2. RENEWAL.

This lease may, at the option of the Government, be renewed from year to year and otherwise upon the terms and conditions herein specified. The Government's option shall be deemed exercised and the lease renewed each year for one (1) year unless the Government gives the Lessor 30 days written notice that it will not exercise its option before this lease or any renewal thereof expires;

PROVIDED that no renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of September, 2013;

AND PROVIDED FURTHER that every three years, from the anniversary date of the lease, the Lessors have the option to request the Government conduct a review of the local real estate market and adjust the consideration herein to reflect increases in property values to insure consideration accurately reflects, "fair market rent". In the event property values indicate a decrease, or no change, in valuation, consideration as established shall remain in effect until the next requested review of the market. Said request shall be in writing posted to the address contained in Article No. 8, NOTICES, contained herein, and posted no later than 90 days prior to every 3rd anniversary date of the lease. (The anniversary date is always October 1 and therefore the date to notify the Government will always be July 1,, every 3rd year.) Rental adjustments, if any, shall be initiated by a supplemental agreement to the lease executed by all parties herein;

AND PROVIDED FURTHER, that adequate appropriations are available from year to year for the payment of rentals.

3. CONSIDERATION.

The Government shall pay the Lessor rental for the premises in the amount of FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) for the term set forth in Article 1 above, payable in quarterly installments of ONE THOUSAND TWO HUNDRED AND FIFTY AND 00/100 DOLLARS ($1,250.00); and FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) for each annual renewal exercised by the Government hereafter, payable in quarterly installments of ONE THOUSAND TWO HUNDRED AND FIFTY AND 00/100 DOLLARS ($1,250.00). Payments shall be made in arrears at the end of each quarter without the submission of invoices or vouchers.



BK 6916 PG 21

4. TERMINATION.

The Government may terminate this lease, in whole or part, at any time by giving at least 30 days notice in writing to the Lessor, and no rental shall accrue after the effective date of termination. Said notice shall be sent by ceritified or registered mail.

5. PROMPT PAYMENT.

The Government will make payments under the terms and conditions specified in this clause. Payment shall be considered paid on the day a check is dated or an electronic transfer is made.

(a) Rent shall be paid quarterly, in arrears, and will be due on the first workday of the month following the payment period.

(b) An interest penalty shall be paid automatically by the Government, without request by the Lessor, if payment is not made within 15 days of the due date.

(1.) The interest penalty shall be at the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Acts of 1978 (41 U.S.C. 611) that is in effect on the payment date. This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1, and July 1. The interest penalty shall accrue daily on the payment amount approved by the Government and be compounded in 30 day increments inclusive from the first day after the due date through the payment date.

(2.) Interest penalties will not accrue after the filing of a claim for such penalties under the Disputes clause or for more than 1 year. Interest penalties of less than $1.00 need not be paid.

(3.) Interest penalties are not required on payment delays due to disagreement between the Government and the Lessor over the payment amount or other issues involving contract compliance or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the Disputes clause 52.232-71 (Dec, 1991)

6. INGRESS AND EGRESS.

The Government and its employees, while driving over the land of the Lessor to the leased premises, shall do so carefully and slowly so as not to injure any of the livestock of the Lessor, and shall leave no gates open so that the livestock may escape. Should the Lessor install fences on his property, nescessary gates or cattle guards across the right-of-way for ingress and egress, except upon the existing road, shall be installed by the Government at no cost to the Lessor.

7. CLAUSES INCORPORATED BY REFERENCE.

This contract incorporates the following clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION CLAUSES

52.201-1 OFFICIALS NOT TO BENEFIT. (APR 1984)
52.203-3 GRATUITIES. (APR 1984)
52.203-5 COVENANT AGAINST CONTINGENT FEES. (APR 1984)
52.203-7 ANTI KICK-BACK PROCEDURES. (OCT 1988)
52.233-1 DISPUTES. (DEC 1991)

8. NOTICES

All notices shall be in writing and sent by United States Certified or Registered mail, return receipt requested, and shall be addressed as follows (or to such other address as either party may designate from time to time by notice to the other):

TO LESSOR: C. Frank Gilmore & Nadine F. Gilmore
P.O. Box 130
Oakley, Utah 84055
Telephone: 801-783-5250

TO GOVERNMENT: Federal Aviation Administration
Real Estate and Utilities Branch
1601 Lind Ave. S.W.
Renton, Washington 98055-4056

General correspondence may be forwarded to the above address via first class mail.



BK 6919 PG 21

Lease No. DTFA11-93-L-15553



9. CONCURRENCES

The Lessor and the Government agree to the provisions of this lease as indicated by the signatures hereinbelow of their duly authorized representative(s). This lease is effective upon execution by the last party thereof.

| LESSOR/TENANTS IN COMMON | THE UNITED STATES GOVERNMENT |
|---|---|
| BY: Charles F. Gillmor | BY: Nora Landers |
| ~~XXXFRANK GILLMORE~~ Charles F. Gillmor C.F.G. | TITLE: LEAD REALTY SPECIALIST |
| DATE 3/1/94 | DATE: 3/23/94 |
| BY: Nadine F. Gillmor | |
| NADINE F. ~~GILLMORE~~ Gillmor NFG | |
| DATE: 3-1-94 | |

State of Utah
County of Summit

Signed and sworn before me this 1st day of March 1994

Pamela R Foote
Residing in Summit County, Utah

NOTARY PUBLIC
PAMELA R. FOOTE
5150 North Old Ranch Road
Park City, Utah 84060
My Commission Expires 3/10/95
STATE OF UTAH

BK691 PG2218

EXHIBIT "B"

**Exhibit B**

VORTAC Site Legal Description:

A parcel of land containing 0.367 acres, more or less, situated in the NW1/4 of Section 5, T 1 N, R 1 W, Salt Lake Base Meridian, Salt Lake County, Utah, described as follows:

From a large post at the NW corner of the NE1/4 of the SW1/4 of said Section 5, being the True Point of Beginning, go north 160 feet; East 30 feet; thence North 70 feet; thence East 80 feet; thence South 140 feet: thence West 80 feet; thence South 90 feet; thence West 30 feet to the True Point of Beginning.

VORTAC Access Road Legal Description:

A right of way for ingress and egress, 30 feet in width, whose centerline starts at a point on the South line of Section 5, T 1 N, R 1 W, Salt Lake Base Meridian, Salt Lake County, Utah, said point being 782.35 feet West from the SE corner of said Section 5; thence N 11°34' W, 460.10 feet: thence S. 89° 40' 30" W., 236.25 feet to a locked gate; thence S. 81° 10' 30" W., 124.19 feet to a point of a curve to the right, around a 67.41 foot radius 102.50 feet; thence. N. 0° 41' 45" W., 365.29 feet; thence N. 04° 14' W., 102.90 feet; thence N. 0° 57' 30" E., 153.19 feet to a point of a curve to the left around a 220.37 foot radius, 248.46 feet; thence N. 63° 38' 30" W., 431.04 feet; thence N. 75° 23' 30" W:, 117.80 feet; thence N. 78° 32' W., 51.09 feet to the point of a curve to the left around a 928 foot radius, 271.74 feet; thence S. 84° 42' W., 309.33 feet, more or less, to the West line of the SE1/4 of said Section 5, said point being North 1556.37 feet and West 2640 feet from the Southeast corner of said Section 5. Containing 2.05 acres, more or less, together with the right to improve, gravel, grade, install culverts, and maintain said road right-of-way.

Restrictive Easement:

The Lessor hereby agrees, as a protection to the proper operation of a VORTAC facility by the United States of America, to prohibit and refrain from the erection of any structure, building, tower, metallic fences, pole or pole lines, or the growth of trees and high shrubs on the property of the Lessor within 1200 feet of the center of the antenna. The Lessor may use or permit to be used the area of 1200 foot radius (exclusive of that area within the fenced plot) for normal farming operation, normal growth of crops and for grazing. Lessor agrees not to alter or allow the alteration of any existing fencing, drainage ditches, building or structures, within this 1200 foot obstruction restriction area, without prior FAA

approval, The Lessor further agrees not to park vehicles or equipment within 400 feet of the center of the plot located on the property. This restriction covers 61.5 acres of the Lessor's land.

EXHIBIT "C"

When Recorded Return to:

Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

# ASSIGNMENT OF LEASE INTEREST

This Assignment of Lease Interest is made among the United States of America, Carroll Marie Gillmor and Catherine Frances Gillmor, as successors in interest to a certain lease and as Sellers of the underlying property (hereinafter "Assignors"), and Thomas D. Peterson and Saundra L. Peterson, husband and wife, an undivided 1/3 interest, as joint tenants, Don R. Parker, a 1/3 interest, and Randal J. Peterson and Sheelagh M. Murphy, husband and wife, an undivided 1/3 interest, as joint tenants, as purchasers of the underlying property (hereinafter "Assignees").

## RECITALS

A. On March 23, 1994, Charles Frank Gillmor and Nadine F. Gillmor, joint tenants, leased certain property to the Federal Aviation Administration of the government of the United States of America for the construction and operation of a VORTAC Facility which lease, as lease DTFA 11-93-L-15553, was recorded on April 18, 1994 as Entry No. 5796477 in Book 6919 at page 2181 of the official records of the Salt Lake County Recorder. The property affected by this lease is located in Salt Lake County, Utah, and is described on Exhibit A (hereinafter referred to as the "property"). The lessee of such lease is the United States of America (the "government"), through the Department of Transportation, Federal Aviation Administration, Northwest Mountain Region, 1601 Lind Avenue. S. W., Renton, Washington 98055-4056.

B. On January 9, 1995, Charles Frank Gillmor died. Nadine F. Gillmor, personally and as the personal representative of the estate of Charles Frank Gillmor, assigned the lease to Carroll Marie Gillmor and Catherine Frances Gillmor under an assignment of lease dated April 11, 1998, a copy of which is attached hereto as Exhibit B.

C. Carroll Marie Gillmor and Catherine Frances Gillmor, as Assignors, are individuals in their own right as Assignees, desire to assign and convey all of their rights accruing to the lessor of the property to Assignees so that Assignees can become the successors to the lessor's interest in the lease.

## TERMS AND CONDITIONS

1. Assignment. Assignors assign to Assignees any and all right, title or interest they may have in the lease, but without warranty of any kind whatsoever. They

acknowledge for the benefit of the Government, that all lease payments under such lease belong to and should be made to Assignees effective from and after the date hereof.

2. Acknowledgment. Assignors acknowledge, for the benefit of the Government, receipt, by Assignees, of all lease payments made by the Government which belong to Assignees.

3. Consent. The Government consents to the foregoing assignment and agrees to recognize Assignees as the lessor under such lease. The rent payments will henceforth be paid to:

Mr. Thomas D. Peterson
Ms. Saundra L. Peterson
Mr. Randal J. Peterson
Ms. Sheelagh M. Murphy
Mr. Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

4. No Amendment. The terms of the Lease are not otherwise modified or amended in any way.

The parties execute this Assignment with the intention of being bound by it.

ASSIGNORS

Date signed: 14 April 1998

Carroll Marie Gillmor

Date signed: April 14, 1998

Catherine Frances Gillmor

ASSIGNEES

Date signed: April 14, 1998

Thomas D. Peterson

EXHIBIT "D"

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
NORTHWEST MOUNTAIN REGION
1601 LIND AVENUE S.W.
RENTON, WASHINGTON 98055

**Lease No. DTFA11-93-L-15553**

Very High Frequency Omnidirectional Range
Tactical Air Navigation (VORTAC) Site

located at

Salt Lake City, Utah

**SUPPLEMENTAL LEASE AGREEMENT No. 1**

SUPPLEMENTAL LEASE AGREEMENT No. 1 reflects a change of Lessor's name and payment address, identifies a single point of contact to represent the Lessor and provides for annual payment of rental.

**WITNESSETH**

WHEREAS, the Government has received a fully executed assignment of Lease Agreement from Catherine Frances Gillmor and Carroll M. Gillmor, conveying their interest in Lease DTFA11-93-L-15553 to Thomas D. and Saundra L. Peterson, husband and wife as joint tenants (undivided 1/3 interest); Randal J. Peterson and Sheelagh M. Murphy, husband and wife as joint tenants (undivided 1/3 interest) and Don R. Parker (1/3 interest); and

WHEREAS, Don R. Parker on behalf of the Lessor, shall be the point of contact for all lease administration matters and Don R. Parker shall be the name to which all rental checks herein shall be made payable; and

WHEREAS, the Government recognizes such name changes to be in accordance with terms of d Lease as successors and assigns to the original lessors, Catherine Frances Gillmor and arroll M. Gillmor.

NOW, THEREFORE, Thomas D. and Saundra L. Peterson, husband and wife as joint tenants (undivided 1/3 interest); Randal J. Peterson and Sheelagh M. Murphy, husband and wife as joint tenants (undivided 1/3 interest) and Don R. Parker (1/3 interest) shall hereinafter be referred to as the Lessor. Don R. Parker is designated as representative and point of contact for the Lessor. The Lease is hereby amended as follows:

1 Article 3, Consideration
Replace and supersede with the following revised Article 3, Consideration:

"The Government shall pay the Lessor rent of ONE THOUSAND TWO HUNDRED FIFTY AND 00/100 DOLLARS ($1,250.00) for the period July 1, 1998 through September 30, 1998; and FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) for each annual renewal exercised by the Government thereafter, payable annually in arrears without the submission of invoices or vouchers. Annual refers to the Government fiscal year beginning October 1 and ending on the following September 30. Checks shall be made payable to **Don R. Parker** on behalf of the Lessor."

SUPPLEMENTAL AGREEMENT No. 1
Lease No. DTFA11-93-L-15553

2. Article 8, Notices
Change the names and address of the Lessor.

**From:** Catherine Frances Gillmor and Carroll M. Gillmor
P.O. Box 58493
Salt Lake City, UT 84158-0493

**To:** Thomas D. Peterson and Saundra L. Peterson;
Randal J. Peterson and Sheelagh M. Murphy and
Don R. Parker

**Mailing Address:** Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

**Don R. Parker is hereby designated as representative and point of contact for the Lessor.**

3. All other terms and conditions of said Lease shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto have executed this supplement and it is effective as of the date of the last signature executed below:

**Lessors:**

By: Thomas D. Peterson Saundra L. Peterson
Thomas D. Peterson and Saundra L. Peterson

By: Randal J. Peterson Sheelagh Murphy
Randal J. Peterson and Sheelagh M. Murphy

By: Don R. Parker
Don R. Parker

**THE [U]NITED STATES OF AMERICA**

By: Albert L. Lee
Albert L. Lee

Title: Contracting Officer

Date: 7/

15553LT3.doc