Kevin Egan Anderson
Douglas J. Parry
PARRY ANDERSON & GARDINER
60 E. South Temple, Suite 1270
Salt Lake City, UT 84111
Phone: (801) 521-3434
Fax: (801) 521-3484

Attorneys for Plaintiffs

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THOMAS D. PETERSON, SAUNDRA L. PETERSON, RANDAL J. PETERSON, SHEELAGH M. MURPHY, and DON R. PARKER,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; THE FEDERAL AVIATION ADMINISTRATION OF THE UNITED STATES OF AMERICA; and JOHN DOES I - XX,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>No. 04-634C<br><br>(Chief Judge Damich) |

Plaintiffs memorandum as follows:

## INTRODUCTION

The Petersons (the "Plaintiffs") own property subject to a lease with the United States Government (the "Defendants"), to build a Vortac Tower. However, the Defendants did not build the Vortac Tower where they agreed to pursuant to the lease. The Plaintiffs also sought to adjust the rent for the property to reflect fair market value. After years of negotiations, the Defendants decided to simply condemn the Plaintiffs' property. The compensation offered by

the Defendants was well below appraisals obtained by the Plaintiffs so they were forced to bring an action for just compensation.

In the Plaintiffs' Complaint (the "Complaint"), the second cause of action is a claim for breach of lease. The Defendants, in its Motion to Dismiss ("Motion"), alleges that the second cause of action is defective because the breach of lease claim was never submitted to the contracting officer and the lease involves property other than the property where the tower was built. However, the Defendants have waived these objections because it did not raise them in its answer.

**STATEMENT OF FACTS**

1. A portion of the Plaintiffs' Property is impacted by a lease (the "Leased Property"), dated March 23, 1994, between Charles Frank Gillmor and Nadine F. Gillmor and the United States of America ("the "Lease"), a copy of which is attached hereto as Exhibit "A," and is incorporated herein by this reference.

2. Plaintiffs purchased and thereby became the owners of the Plaintiffs' Property including the Leased Property. Plaintiffs are the successors in interest to Charles Frank Gillmor and Nadine F. Gillmor in and to the Lease, by formal written assignment of the interests of the Gillmors, a copy of which is attached hereto as Exhibit "B," and incorporated herein by this reference.

3. Defendants did construct and now operate a VHF Omni Directional Range Tactical Air Navigation facility ("Vortac Tower") on the Plaintiffs' Property. However, the Vortac Tower constructed by Defendants was *not* built on the Leased Property. Instead,

Defendants breached the Lease and built the Vortac Tower, and the corridor running cables from the south boundary of Plaintiffs' Property to the Vortac Tower, on Plaintiffs' Property which Defendants were not leasing from Plaintiffs or their predecessors-in-interest, all without notice, permission or approval. Moreover, Defendants have constructed and use an access road from the south boundary of the Plaintiffs' Property leading the Vortac Tower. *See* U.S. Department of Transportation Letter, October 1, 2001, attached hereto as Exhibit C and incorporated herein by this reference.

4. In November, 2001, Defendants sent documents and surveys to Plaintiffs which indicated, for the first time, that the Vortac Tower is and has been, during the entire term of the Lease, located on property other than that described in the Lease. *See* U.S. Department of Transportation Letter, November 23, 2001, attached hereto as Exhibit D and incorporated herein by this reference.

## ARGUMENT

### THE PLAINTIFFS HAVE WAIVED THE DEFENSES RAISED IN THE MOTION TO DISMISS.

The Defendants already submitted an Answer (the "Answer") to the Plaintiffs' Complaint (the "Complaint"). In that Answer, the Defendants raised four affirmative defenses in objection to the Complaint. However, the defenses in the Answer did not include failure to present a claim to the contracting officer or any question about whether the Lease governs the property in question which are the two defenses raised now in the Defendants' Motion to Dismiss. The Defendants are effectively trying to amend their answer without the leave of the Court by adding defenses that were not pled in its Answer.

The "[f]ailure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'" *Satchell v. Dillworth*, 745 F.2d 781 (quoting 5 C. Wright & A. Miller, *Federal Practic & Procedure* § 1278, at 339 (1969); *see Downing v. Williams,* 624 F.2d 612, 626 n. 23 (5th Cir. 1980), vacated on other grounds, 645 F.2d 1126 (5th Cir. 1981) (en banc); *see also Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 533 (11th Cir. 1983; *Myers v. John Deere Ltd*., 683 F.2d 270, 272-273 (8th Cir. 1982); *Pinto Trucking Serve, Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981). Even more specifically, this principal applies to objections to allegedly defective statements of a cause of action as is the case here:

> The objection to a defective statement of a cause of action ought to have been made by demurrer so that the plaintiff might have had an opportunity to amend and make his allegations of a good cause of action more precise and definite. The plaintiff may also insist **that the answers of the defendants have waived the objections to the sufficiency of the allegations of the complaint, as they have not in their answers reserved the right to make such objections** as upon demurrer.

24 F. 241 (Circuit Court, W.D. North Carolina 1885) (emphasis added).

Since the Defendants did not raise the Plaintiffs' alleged failure to submit a claim to the contracting officer as a defense in its answer, the Defendants have waived as a defense any requirement that the Plaintiffs must give a notice of claim to the contracting officer.

In summary, because the Defendants did not object in their Answer that no notice of claim was sent to the contracting officer, they have failed to reserve the right to make such an objection now. The same holds true for the Defendants' second argument, that the Lease does not affect the property which is in dispute. The Defendants did not raise this defense in their Answer and cannot do so now.

Respectfully submitted,

s/ Kevin Egan Anderson

PARRY ANDERSON & GARDINER
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
(801) 521-3434
Attorneys for Plaintiffs

August 15, 2005

**CERTIFICATE OF FILING**

I hereby certify that on August 15, 2005, a copy of the foregoing PLAINTIFF'S REPLY MEMORANDUM IN OPPOSITION TO DISMISS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

# EXHIBIT A

5796477

Lease

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
NORTHWEST MOUNTAIN REGION
1601 LIND AVENUE SW.
RENTON, WASHINGTON 98055-4056

Lease No. DTFA11-93-L-15553
Location: Salt Lake City, UT.
Facility: VORTAC

LEASE

between

Charles L. FRANK GILMORE & NADINE F. GILMORE, JOINT TENANTS

and

THE UNITED STATES OF AMERICA

THIS LEASE, made and entered into this 23rd day of March, 1994 by and between Charles L. Frank Gilmore & Nadine F. Gilmore, Joint Tenants, whose address is;

P.O. Box 130
Oakley, Utah, 84055

for their heirs, executors, administrators, successors, and assigns, hereinafter called the Lessor and the United States of America, hereinafter called the Government:

WITNESSETH: The parties hereto for the consideration hereinaafter mentioned covenant and agree as follows:

1. TERM.

For the term beginning October 1, 1993 and ending September 30, 1994 the Lessor hereby leases to the Government the following described property, hereinafter called the premises, viz:

See attached, Exhibit "A" attached hereto and made a part hereof.

(a) Together with a right of way for ingress to and egress from the premises; a right of way for establishing and maintaining a pole line or pole lines for extending electrical power and telecommunications facilities to the premises; all rights-of-way to be over the said lands and adjoining lands of the Lessor, and unless herein described by metes and bounds, to be by routes reasonably determined to be the most convenient to the Government.

(b) And the right of grading, conditioning, and installing drainage facilities, and seeding the soil of the premises, and the removal of all obstructions from the premises which may constitute a hindrance to the establishment of Government facilities.

BK 691 PG

(c) And the right to make alterations, attack fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased, which alterations, fixtures, additions, structures or signs so placed in or upon or attached to said premises shall be and remain the property of the Government, and may be removed upon the date of expiration or termination of this lease, or within ninety (90) days thereafter, by or on behalf of the Government, or its grantees, or purchasers of said alterations, fixtures, additions, structures, or signs.

2. RENEWAL.

This lease may, at the option of the Government, be renewed from year to year and otherwise upon the terms and conditions herein specified. The Government's option shall be deemed exercised and the lease renewed each year for one (1) year unless the Government gives the Lessor 30 days written notice that it will not exercise its option before this lease or any renewal thereof expires;

PROVIDED that no renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of September, 2013;

AND PROVIDED FURTHER that every three years, from the anniversary date of the lease, the Lessors have the option to request the Government conduct a review of the local real estate market and adjust the consideration herein to reflect increases in property values to insure consideration accurately reflects, "fair market rent". In the event property values indicate a decrease, or no change, in valuation, consideration as established shall remain in effect until the next requested review of the market. Said request shall be in writing posted to the address contained in Article No. 8, NOTICES, contained herein, and posted no later than 90 days prior to every 3rd anniversary date of the lease. (The anniversary date is always October 1 and therefore the date to notify the Government will always be July 1, every 3rd year.) Rental adjustments, if any, shall be initiated by a supplemental agreement to the lease executed by all parties herein;

AND PROVIDED FURTHER, that adequate appropriations are available from year to year for the payment of rentals.

3. CONSIDERATION.

The Government shall pay the Lessor rental for the premises in the amount of FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) for the term set forth in Article 1 above, payable in quarterly installments of ONE THOUSAND TWO HUNDRED AND FIFTY AND 00/100 DOLLARS ($1,250.00); and FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) for each annual renewal exercised by the Government hereafter, payable in quarterly installments of ONE THOUSAND TWO HUNDRED AND FIFTY AND 00/100 DOLLARS ($1,250.00). Payments shall be made in arrears at the end of each quarter without the submission of invoices or vouchers.

BK 6 9 1 9 PG

4. TERMINATION.

The Government may terminate this lease, in whole or part, at any time by giving at least 30 days notice in writing to the Lessor, and no rental shall accrue after the effective date of termination. Said notice shall be sent by ceritified or registered mail.

5. PROMPT PAYMENT.

The Government will make payments under the terms and conditions specified in this clause. Payment shall be considered paid on the day a check is dated or an electronic transfer is made.

(a) Rent shall be paid quarterly, in arrears, and will be due on the first workday of the month following the payment period.

(b) An interest penalty shall be paid automatically by the Government, without request by the Lessor, if payment is not made within 15 days of the due date.

(1.) The interest penalty shall be at the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Acts of 1978 (41 U.S.C. 611) that is in effect on the payment date. This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1, and July 1. The interest penalty shall accrue daily on the payment amount approved by the Government and be compounded in 30 day increments inclusive from the first day after the due date through the payment date.

(2.) Interest penalties will not accrue after the filing of a claim for such penalties under the Disputes clause or for more than 1 year. Interest penalties of less than $1.00 need not be paid.

(3.) Interest penalties are not required on payment delays due to disagreement between the Government and the Lessor over the payment amount or other issues involving contract compliance or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the Disputes clause 52.232-71 (Dec, 1991)

6. INGRESS AND EGRESS.

The Government and its employees, while driving over the land of the Lessor to the leased premises, shall do so carefully and slowly so as not to injure any of the livestock of the Lessor, and shall leave no gates open so that the livestock may escape. Should the Lessor install fences on his property, nescessary gates or cattle guards across the right-of-way for ingress and egress, except upon the existing road, shall be installed by the Government at no cost to the Lessor.

BK 6 9 1 9 PG

7. CLAUSES INCORPORATED BY REFERENCE.

This contract incorporates the following clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION CLAUSES

52.201-1 OFFICIALS NOT TO BENEFIT. (APR 1984)
52.203-3 GRATUITIES. (APR 1984)
52.203-5 COVENANT AGAINST CONTINGENT FEES. (APR 1984)
52.203-7 ANTI KICK-BACK PROCEDURES. (OCT 1988)
52.233-1 DISPUTES. (DEC 1991)

8. NOTICES

All notices shall be in writing and sent by United States Certified or Registered mail, return receipt requested, and shall be addressed as follows (or to such other address as either party may designate from time to time by notice to the other):

TO LESSOR: C. Frank Gilmore & Nadine F. Gilmore
P.O. Box 130
Oakley, Utah 84055
Telephone: 801-783-5250

TO GOVERNMENT: Federal Aviation Administration
Real Estate and Utilities Branch
1601 Lind Ave. S.W.
Renton, Washington 98055-4056

General correspondence may be forwarded to the above address via first class mail.

Lease No. DTFA11-93-L-15553



9. CONCURRENCES

The Lessor and the Government agree to the provisions of this lease as indicated by the signatures hereinbelow of their duly authorized representative(s). This lease is effective upon execution by the last party thereof.

LESSOR/TENANTS IN COMMON

BY: [signature]

~~FRANK GILLMORE~~ Charles F. Gillmor C.F.G.

DATE 3/1/94

BY: [signature]

NADINE F. ~~GILMORE~~ Gillmor NFG

DATE: 3-1-94

THE UNITED STATES GOVERNMENT

BY: [signature]

TITLE: LEAD REALTY SPECIALIST

DATE: 3/23/94

State of Utah
County of Summit

Signed and sworn before me this 1st day of March 1994

[signature]
Residing in Summit County, Utah

NOTARY PUBLIC
PAMELA R. FOOTE
5150 North Old Ranch Road
Park City, Utah 84060
My Commission Expires 3/10/95
STATE OF UTAH

BK 691 PG

# EXHIBIT B

When Recorded Return to:

Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

# ASSIGNMENT OF LEASE INTEREST

This Assignment of Lease Interest is made among the United States of America, Carroll Marie Gillmor and Catherine Frances Gillmor, as successors in interest to a certain lease and as Sellers of the underlying property (hereinafter "Assignors"), and Thomas D. Peterson and Saundra L. Peterson, husband and wife, an undivided 1/3 interest, as joint tenants, Don R. Parker, a 1/3 interest, and Randal J. Peterson and Sheelagh M. Murphy, husband and wife, an undivided 1/3 interest, as joint tenants, as purchasers of the underlying property (hereinafter "Assignees").

## RECITALS

A. On March 23, 1994, Charles Frank Gillmor and Nadine F. Gillmor, joint tenants, leased certain property to the Federal Aviation Administration of the government of the United States of America for the construction and operation of a VORTAC Facility which lease, as lease DTFA 11-93-L-15553, was recorded on April 18, 1994 as Entry No. 5796477 in Book 6919 at page 2181 of the official records of the Salt Lake County Recorder. The property affected by this lease is located in Salt Lake County, Utah, and is described on Exhibit A (hereinafter referred to as the "property"). The lessee of such lease is the United States of America (the "government"), through the Department of Transportation, Federal Aviation Administration, Northwest Mountain Region, 1601 Lind Avenue. S. W., Renton, Washington 98055-4056.

B. On January 9, 1995, Charles Frank Gillmor died. Nadine F. Gillmor, personally and as the personal representative of the estate of Charles Frank Gillmor, assigned the lease to Carroll Marie Gillmor and Catherine Frances Gillmor under an assignment of lease dated April 11, 1998, a copy of which is attached hereto as Exhibit B.

C. Carroll Marie Gillmor and Catherine Frances Gillmor, as Assignors, are individuals in their own right as Assignees, desire to assign and convey all of their rights accruing to the lessor of the property to Assignees so that Assignees can become the successors to the lessor's interest in the lease.

## TERMS AND CONDITIONS

1. Assignment. Assignors assign to Assignees any and all right, title or interest they may have in the lease, but without warranty of any kind whatsoever. They

acknowledge for the benefit of the Government, that all lease payments under such lease belong to and should be made to Assignees effective from and after the date hereof.

2. Acknowledgment. Assignors acknowledge, for the benefit of the Government, receipt, by Assignees, of all lease payments made by the Government which belong to Assignees.

3. Consent. The Government consents to the foregoing assignment and agrees to recognize Assignees as the lessor under such lease. The rent payments will henceforth be paid to:

Mr. Thomas D. Peterson
Ms. Saundra L. Peterson
Mr. Randal J. Peterson
Ms. Sheelagh M. Murphy
Mr. Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

4. No Amendment. The terms of the Lease are not otherwise modified or amended in any way.

The parties execute this Assignment with the intention of being bound by it.

ASSIGNORS

Date signed: 14 April 1998 — Carroll Marie Gillmor (signature)
Carroll Marie Gillmor

Date signed: April 14, 1998 — Catherine Frances Gillmor (signature)
Catherine Frances Gillmor

ASSIGNEES

Date signed: April 14, 1998 — Thomas D. Peterson (signature)
Thomas D. Peterson

# EXHIBIT C

U.S. Department
of Transportation

Federal Aviation Administration

Northwest Mountain Region
Colorado, Idaho, Montana
Oregon, Utah, Washington,
Wyoming

1601 Lind Avenue, S. W.
Renton, Washington 98055-4056

October 1, 2001

CERTIFIED MAIL #7001 0360 0003 4975 4104 – RETURN RECEIPT REQUESTED

Don R. Parker
Thomas D. and Saundra L. Peterson
Randal J. Peterson and Sheelagh Murphy
c/o Don R. Parker
2145 South Main Street
Salt Lake City, UT 84115

Subject: Lease DTFA11-93-L-15553, VORTAC Facility at Salt Lake City
Re: Purchase Offer

The Federal Aviation Administration (FAA) owns and operates a VHF Omni directional Range Tactical Air Navigation (VORTAC) facility on property in Salt Lake County in Utah leased from you under FAA Lease DTFA11-93-L-15553. This VORTAC site is a vital part of the national airspace navigation system.

We had proposed to increase the rental amount paid to you; you have refused this offer. The offer was based on a land appraisal of your property performed by a certified MAI appraiser, whose appraisal report was approved as meeting the uniform appraisal standards for federal land acquisitions. I have discussed the land value and rent amount issue with Tom Peterson on several occasions. Over the course of time, Mr. Peterson has stated that the land has been appraised at a value approximately 3 to 5 times the value extrapolated from the Government rent offer.

Our analysis of the rental amount proposed by you has led us to conclude that it would be more economically viable for the Government to purchase the property rather than to continue to lease the land.

The current leased property is used as a restrictive easement area to protect the proper operation of the VORTAC antenna and facility. The restrictive area is the area that lies within a 1200 feet radius from the center of the VORTAC antenna. Because of an upgrade of the VORTAC antenna system to a Doppler system, the restrictive easement area radius requirement is being reduced to 1000 feet. This purchase offer is for the VORTAC site, road and property that lie within the 1000 feet radius and the parcel of your property that lies west of this radial restriction area.

If this offer to purchase is not acceptable to you, this matter will be forward to the Department of Justice for acquisition of the property under procedures of condemnation.

In accordance with Department of Transportation Order No. 4420.3, subparagraph 222, the FAA is required to make its offer to purchase in writing, setting forth the established just compensation based upon fair market value as indicated by the approved appraisal.

The area required for the VORTAC site has been appraised at "fair market value", under which the value is the amount of cash that a well-informed buyer, willing but not obligated to buy the property, would pay, and which a well-informed seller, willing but not obligated to sell, would accept, taking into consideration all the uses to which the property is adapted and might in reason be applied.

No increase or decrease in the fair market value of the property to be acquired, caused by the public improvement, has been considered by the FAA and/or its appraisers in determining the fair market value.

In determining just compensation, the appraiser did not give any consideration or allowance for relocation assistance, or payments the owner may be entitled to receive under Title II of the Uniform Act, or any agreement by the FAA to pay certain settlement costs.

The offer contained herein is just compensation for fee simple title to the leased premises, based upon an inspection and independently prepared appraisal of the property by an MAI appraiser. The just compensation shown below is the FAA's approved appraisal:

VORTAC site 0.368 acres, 1000 feet radial restrictive easement area of 52.89 acres and the 16.23 acres parcel west of the radial restrictive easement area

Total Just Compensation offered is $180,674

Enclosed are 4 copies of FAA Form 4420, Contract to Sell Real Property. Please sign all four copies before a notary public, and return all 4 with original signatures to this office in the enclosed return envelope.

Please respond to this offer by October 15, 2001. If you need additional time to respond, please contact me. If we do not receive your response within the time specified, that will be construed as your not accepting the offer, and this matter will be referred to the Department of Justice.

If you have any questions, I may be contacted at (425) 227-2849.

Sincerely,

Albert L. Lee

Albert L. Lee
Contracting Officer
Acquisition Management Branch

Encls.

cc w/encls: Thomas D. and Saundra L. Peterson
19303 Apple Valley Road
Sonoma, CA 95476

Randal J. Peterson and Sheelagh Murphy
22255 Arnold Drive
Sonoma, CA 95476

| DEPARTMENT OF TRANSPORTATION<br>FEDERAL AVIATION ADMINISTRATION<br>**CONTRACT TO SELL REAL PROPERTY** | REFERENCE<br><br>DTFA11-02-K-00127 |
|---|---|

The undersigned, hereinafter called the "Vendor," who represent that they are the owners of the real property described below, hereby, for themselves, their heirs, executors, administrators, successors and assigns, agree to convey to the United States of America, in accordance with the terms and conditions set forth herein, the land, together with the buildings and improvements thereon, unless specifically excepted, and all rights, hereditaments, easements, and appurtenances thereto.

The real property which the Vendor agrees to convey to the United States of America is located in:

| SALT LAKE CITY | SALT LAKE COUNTY | STATE OF UTAH |
|---|---|---|

as shown by the attached plat and more particularly described as follows:

EXHIBIT "A", Legal Description of 1000 feet radial area from center of VORTAC equivalent to 52.89 acres more or less and parcel west of radial area eqivalent to 16.23 acres more or less

EXHIBIT "B", PLAT MAP

The Vendor covenants and agrees to convey to the United States of America the indefeasible fee simple title to the above-described land subject only to the following outstanding rights in third parties: (If none, so state)

None

The Vendor specifically reserves and excepts the following rights and interests in the above-described property: (If none, so state)

None

The Vendor, and the spouse, if any, of the Vendor, by signing below, agrees to join in any deed to the United States, and agrees to convey said real property to the United States of America in consideration of the sum of **ONE HUNDRED EIGHTY THOUSAND SIX HUNDRED SEVENTY FOUR and No/100 Dollars** ($180,674.00) which amount shall be paid at the time the title to the property become vested in the United States.

The Vendor further agrees that the United State shall have fourteen (14) calendar days to indicate its acceptance of the contract price and the terms and conditions herein, by mailing or delivering a copy of this contract signed by a duly, authorized representative of the United States, to the Vendor at the address indicated below.

| NAME OF VENDOR | SIGNED, SEALED AND DELIVERED THIS |
|---|---|
| Don R. Parker<br>Thomas D. and Saundra L. Peterson<br>Randal J. Peterson and Sheelagh Murphy | ____________ DAY OF ____________ 2001 |
| STREET ADDRESS, CITY AND STATE<br>c/o Don R. Parker<br>2145 South Main Street<br>Salt Lake City, UT 84115 | BY ____________<br>(VENDOR)<br>BY ____________<br>(VENDOR)<br>BY ____________<br>(VENDOR) |
| The foregoing offer of the Vendor is hereby accepted for and on behalf of the United States of America this<br><br>________ DAY OF ____________ 2001 | BY ____________<br><br>____________<br>(Title) |

TERMS AND CONDITIONS OF CONTRACT

1. SURVEY WITH PRICE ADJUSTMENT IF LESS AREA. The description of the property is subject to such modifications as may be necessary to conform to a survey of the property to be made by and at the expense of the United States. In the event that the property to be conveyed has an area less than indicated by the dimensions given to the description (clear building space, exclusive of sidewalks, etc.), at the election of the United States an equitable reduction shall be made in the amount of the purchase price. The United States is not obligated to conclude the purchase of an area less than that described.

2. SATISFACTORY TITLE AND TITLE EVIDENCE.

a. In order for the land to be acquired by voluntary conveyance, the title must be satisfactory to the Attorney General of the United States. The United States will defray the expenses incident to the preparation of the deed and obtaining of title evidence in the event that the title to the property should be unsatisfactory, the Vendor agrees to deliver or cause to be delivered to the United States, at the Vendor's expense, such deeds, release, affidavits, or other title instruments as the Attorney General may require to cure title defects. Should the Vendor fail to cure the title defects within sixty (60) days (or such extended period as the Attorney General may allow) after receipt of written notice of such defects, the United States may elect either to terminate this contract by giving written notice of termination to Vendor, or it may condemn the property as provided in paragraph 4 hereof. If the United State should give such notice of termination, the contact and the obligations incurred there under shall be deemed terminated as of the date of such notice without liability by the United States.

b. The title when conveyed to the United States shall be clear of all mineralrights and interests, easements, restrictions, and leases, except those which may be acceptable to the United States. All judgment, taxes, assessment liens or encumbrances of any sort, existing or inchoate, shall be satisfied. However, it shall not be necessary to discharge liens and mortgages until such time as the transfer of title to the Government is made.

3. DEED. Title to the property shall be conveyed to the United States by a general warranty deed, which shall be satisfactory to the Attorney General, except that instruments of conveyance by states, municipal corporations, and persons acting solely in a representative capacity need not contain general warranty covenants, if otherwise satisfactory to the Attorney General. The purchase price recited in the deed shall be the actual consideration paid by the United States. The deed will be prepared by the United States and recorded at its own expense. The Vendor shall, however obtain and affix to the deed, at the cost of the Vendor, documentary revenue stamps required by law.

4. CONDEMNATION PROCEEDINGS. The United States has the right to acquire the property by institution of condemnation proceedings in the appropriate Federal court having jurisdiction. The Vendor agrees to cooperate with the United States in the prosecution of such condemnation proceedings and expressly consents that this contract to sell real property can be used as a basis for stipulation therein for the purpose of fixing the just compensation of the property. The Vendor further agrees that any and all awards of just compensation that may be determined by judgment of the court on behalf of any and all persons, corporations, or associations, other than the Vendor shall be deducted from the purchase price, and the Vendor, consents to the entry of such judgments, if any, and to accept the remaining balance as full and just compensation for the taking of the property described.

5. DIMINUTION IN VALUE, LOSS OR DAMAGE. The Vendor agrees not to do, or to permit others to do, any act by which the value of the subject property may be diminished or whereby the title to the property may be encumbered. The Vendor further agrees that if any loss or damage to the property, or to any part thereof, should occur from fire or acts of God or any other cause prior to the vesting of satisfactory title to the property in the United States or delivery of possession, whichever occurs first, the loss or damage shall be borne by the Vendor, and the United States may, without liability, refuse to accept conveyance of the property, or may elect to accept conveyance based upon an equitable adjustment of the purchase price.

6. ENTIRE SITE TO BE ACQUIRED. If the property described in this contract is composed of more than one parcel of land, the United States shall be under no obligation to acquire any parcel until the Attorney General shall have rendered a favorable opinion on the title to all the parcels embraced in the entire tract. Where the United States determines that a portion of the property shall be acquired by condemnation proceedings, as provided in paragraph 4, the United States shall not be required to conclude the purchase of any parcel until the entire tract has been acquired.

7. ATTEMPTED VARIATIONS. No variation or departure from the terms of this contract will be binding on the United States unless previously agreed upon in writing by the Administrator of the Federal Aviation Agency or his duly authorized representative.

8. OFFICIALS NOT TO BENEFIT. No Member of or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract, or to any benefit that may arise thereupon; but this provision shall not be construed to extend to the contract if made with a corporation for its general benefit.

9. COVENANT AGAINST CONTINGENT FEES. The Vendor warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide established commercial or selling agencies maintained by the Vendor for the purpose of securing business. For breach or violation of this provision, the United States shall have the right to annual this contract without liability or in its discretion to deduct from the contract price the full amount of such commission, percentage, brokerage, or contingent fee.

10.EXAMINATION OF RECORDS. The vendor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three (3) years after final payment under this contract, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Vendor involving transactions related to this contract.

11. CLEARING OF SITE. In the event the Vendor reserves the right to remove buildings or other improvements from the site, this Condition 11 shall apply.

a. The Vendor agrees, without expense to the United States and to the satisfaction of the custodian of the site, to remove the said building or other improvements down to ground level, and also to remove all tracks, poles, and wires (overhead or underground), all gas, water, and heating pipes, ducts, conduits, etc., and sewers crossing the site, or, in lieu of removal thereof, to plug at the lot lines any such pipes, ducts, conduits, or sewers.

b. Immediately after title to the land shall have vested in the United States (or if removal of reserved buildings or other improvements shall have created a dangerous condition, then immediately after such condition is created), the Vendor agrees, without expense to the United States, to rail off or cover, to the satisfaction of the custodian of the site, all open wells, cellars, or other excavations on the site.

c. Prior to the payment of the purchase price to the Vendor for the land, the Vendor agrees to furnish a good and sufficient bond in such amount as the United States may deem appropriate, guaranteeing the performance of all of the obligations of the Vendor relating to site clearance set forth above.

d. If the Vendor fails to comply with any of the obligations set forth in subparagraphs a, b, and c of these special provisions, the United States, or its duly authorized representative, may perform the work, sell or dispose of any buildings or other improvements, or any portion thereof, and collect from the Vendor or the obligors on the bond referred to in subparagraph c here in, all costs incurred that are in excess of the proceeds of any such sale.

# EXHIBIT D

U.S. Department
Of Transportation

Federal Aviation
Administration

Northwest Mountain Region
Colorado, Idaho, Montana
Oregon, Utah, Washington,
Wyoming

1601 Lind Avenue, S. W.
Renton, Washington 98055-4056

November 23, 2001

Tom Peterson
19303 Apple Valley Road
Sonoma, CA 95476

Dear Mr. Peterson:

Subject: Lease DTFA11-93-L-15553, VORTAC Facility at Salt Lake City
Re: Your October 19, 2001 demand for removal of the VORTAC equipment

This is to follow up on the FAA October 22, 2001 telefax response to your telefax stating that the VORTAC facility is located on land other than that described in the lease and your demand for FAA to remove its VORTAC equipment.

We have examined the description in the lease. The land was surveyed prior to our having the land appraised. The surveyor notes that the large post at the NW comer of the NE 1/4 of the SW 1/4 of said Section 5 referred to in the lease does not reside at that location. The description has been used since the FAA has been leasing this property for over 20 years. The location of the VORTAC building and tower have remained in their respective locations since the FAA has been leasing the site. To more accurately describe this same site plot, the surveyor has provided a legal description of the site tied to Salt Lake County monuments, which is the legal description used in the offer to purchase the property. The description is as follows:

*VORTAC Site Legal Description*

*A parcel of land containing 0.368 acres situated in the NW 1/4 of Section 5, T I N, R 1 W, Salt Lake and Base Meridian, Salt Lake County, Utah, described as follows:*

*Beginning at a point North 89°49'05" East 1270.58 feet, along the quarter section line, and North 00°10'55" East 317.57 feet from a Salt Lake County monument marking the West Quarter Corner of said Section 5, Township 1 North, Range 1 West, Salt Lake and Base Meridian and running thence North 12°02'47" West for 18.06 feet; thence*
*North 22°57'22" East for 113.76 feet; thence*
*South 89°14'20" East for 106.84 feet; thence*
*South 00°07'25" East for 119.97 feet; thence*
*South 89°36'17" West for 147.69 feet to the point of beginning.*

The operation of the VORTAC is critical to the safe navigation of aircraft in National Air Space. Removal of any VORTAC equipment would make the VORTAC system inoperable and place aircraft in danger of safe operation, resulting in severe risk to human life and safety. Accordingly, the VORTAC equipment cannot be removed.

The Government has the right under the lease to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased, which alterations, fixtures, additions, structures or signs so placed in or upon or attached to said premises shall be and remain the property of the Government, and may be removed upon the date of expiration or termination of this lease.

Sincerely,

Albert L. Lee

Albert L. Lee
Contracting Officer
Acquisition Management Branch